UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIA S.,[1]<br><br>                              Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>                              Defendant. | Case No.: 22cv1880-MSB<br><br>**ORDER REVERSING DECISION OF COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS [ECF NO. 17]** |

On November 29, 2022, Silvia S. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C.A. § 405(g), seeking judicial review of a decision by the Commissioner of Social Security ("Defendant" or "the Commissioner") denying Plaintiff's application for disability insurance benefits.  (ECF No. 1.)  Based on all parties' consent, (see ECF Nos. 3, 5), this case is before the undersigned as presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c).

Now pending before the Court is Plaintiff's Opening Brief, claiming error by the Administrative Law Judge ("ALJ") who conducted the administrative hearing and issued

---

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the court in [Social Security cases under 42 U.S.C. § 405(g)] will refer to any non-government parties by using only their first name and last initial."

the opinion denying Plaintiff's claim.  (ECF No. 17.)  The Court has carefully reviewed the Complaint [ECF No. 1], the Certified Administrative Record ("AR") [ECF No. 12], Plaintiff's Opening Brief [ECF No. 17], and Defendant's Responsive Brief [ECF No. 22].  For the reasons set forth below, the Court **ORDERS** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further administrative proceedings.

## I.   PROCEDURAL BACKGROUND

On May 5, 2020, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging an inability to work since July 3, 2017.  (AR 282–83.)   After her application was denied initially and upon reconsideration, (AR 156, 160–61), Plaintiff requested an administrative hearing, (AR 170–71).  ALJ Andrew Verne held a telephonic hearing on December 14, 2021.  (AR 84–106.)  Plaintiff appeared at the hearing with counsel, and both Plaintiff and a vocational expert ("VE") testified.  (Id.)

As reflected in the January 18, 2022 hearing decision, the ALJ found Plaintiff had not been disabled as defined in the Social Security Act from December 13, 2021, the amended alleged onset date,[2] through the date of the ALJ's decision.  (AR 26–27.)  The Appeals Council denied Plaintiff's request for review on October 28, 2022, rendering the ALJ's decision the Commissioner's final decision.  (AR 1.); 42 U.S.C. § 405(h).  On November 29, 2022, Plaintiff timely filed the instant civil action.  (See ECF No. 1.)

## II.   SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 3, 2017, the initial alleged onset date.  (AR 19.)  At step two, the ALJ found Plaintiff had "the following

---

[2] The ALJ granted Plaintiff's motion to amend the onset date to one day prior to the hearing, Plaintiff's 55th birthday, classifying Plaintiff as an individual of advanced age.  (See AR 88.)

severe impairments: degenerative disc disease of the back, left upper extremity rotator cuff repair, degenerative joint disease of the left shoulder, and obesity." (Id.) At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. (Id.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to do the following:

> [P]erform light work as defined in 20 C.F.R. § 404.1567(b) and the following limitations: lift, carry, push, pull 20 pounds occasionally and up to 10 pounds frequently; stand and/or walk six hours and sit six hours in an eight-hour workday with normal breaks; occasionally climb ramps and stairs, ropes, ladders, or scaffolds, and frequently balance, stoop, kneel, crouch, and crawl; should avoid concentrated exposure to extreme cold, vibration, hazards, including unprotected heights and dangerous, moving machinery; and can frequently reach overhead bilaterally.

(AR 20.)

At step four, the ALJ compared Plaintiff's RFC to the physical and mental demands of her past relevant work and found that Plaintiff was capable of performing her past relevant work as a fast-food services manager. (AR 25–26.) The ALJ concluded that because Plaintiff could perform her past relevant work as a fast-food services manager as generally performed in the national economy, she was not disabled. (Id.) The ALJ ended the evaluation process at step four. (AR 26.)

### III. DISPUTED ISSUE

As reflected in Plaintiff's Opening Brief, Plaintiff raises one issue to support reversal and remand: that the ALJ improperly rejected her subjective symptom testimony without providing clear and convincing reasons. (ECF No. 17 at 4.)

### IV. STANDARD OF REVIEW

Section 405(g) of the Social Security Act allows unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited, and the denial of benefits will not be disturbed if it is

1  supported by substantial evidence in the record and contains no legal error.  Id.; Molina
2  v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) superseded on other grounds by 20 C.F.R.
3  § 404.1502(a).
4        "Substantial evidence means more than a mere scintilla, but less than a
5  preponderance.  It means such relevant evidence as a reasonable mind might accept as
6  adequate to support a conclusion."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017)
7  (quoting Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988));
8  see also Richardson v. Perales, 402 U.S. 389, 401 (1971).  Where the evidence is
9  susceptible to more than one rational interpretation, an ALJ's decision must be upheld.
10  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).
11        The ALJ's resolution of conflicts and ambiguities in medical evidence is entitled to
12  deference.  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  However, even if the
13  reviewing court finds that substantial evidence supports an ALJ's conclusions, the court
14  must set aside the decision if the ALJ failed to apply the proper legal standards in
15  weighing the evidence and reaching his or her decision.  See Batson v. Comm'r of Soc.
16  Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

## V.  DISCUSSION

### A.  The ALJ Did Not Properly Explain his Rejection of Plaintiff's Subjective Symptom Testimony

Plaintiff argues that despite finding no evidence of malingering, the ALJ failed to offer specific, clear, and convincing reasons for rejecting Plaintiff's statements regarding the severity of her pain and symptoms. (ECF No. 17 at 5–6.)  Specifically, Plaintiff asserts that the ALJ merely recited the medical evidence and did not perform a subjective pain analysis considering her specific pain and symptom testimony. (Id.)  Plaintiff further claims the ALJ merely found that the medical record failed to support her claims, which alone is insufficient to satisfy the clear and convincing standard. (Id. at 6.)  Finally, Plaintiff preemptively argues that any new justifications the Commissioner may raise

cannot cure the ALJ's failure to explain his treatment of Plaintiff's testimony in his written decision. (Id. at 5-7.)

Defendant contends that the ALJ's findings regarding Plaintiff's subjective symptom statements are supported by substantial evidence and are sufficiently specific to determine that the ALJ rejected Plaintiff's statements on permissible grounds. (ECF No. 22 at 3.) Specifically, Defendant argues that the ALJ reasonably weighed Plaintiff's pain and symptom testimony against her medical history, and his rejection was supported by her conservative treatment and contradictory medical records. (Id. at 5-9.) Defendant also argues the ALJ did indeed perform a subjective pain analysis in determining Plaintiff's RFC, and that Plaintiff fails to prove her RFC should be any more limited than the ALJ found. (Id. at 5–6.)

### 1. Applicable law

When evaluating a claimant's allegations regarding subjective symptoms such as pain, the ALJ must engage in a two-step analysis. See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996), superseded, in part, on other grounds by 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 16-3p,[3] 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)). The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain alleged, but only that it could have reasonably

---

[3] SSR 16-3p, which went into effect before the ALJ's decision, rescinded and superseded SSR 96-7p and the former "credibility" language. The Ninth Circuit noted that the SSR 16-3p "makes clear what [the] precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo, 871 F.3d at 678 (quoting SSR 16-3p).

caused some degree of the pain. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009) (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Second, if the first step has been satisfied and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of her symptoms "only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15). "The clear and convincing standard is the most demanding required in Social Security cases." Revels, 874 F.3d at 648 (quoting Garrison, 759 F.3d at 1014–15). General findings are insufficient, and the ALJ must identify which specific pain and symptom statements are being discounted and what evidence undermines those claims. See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). An ALJ's failure to identify specific statements and explain why they are not credible precludes meaningful review because the reviewing court cannot determine if the ALJ's decision was supported by substantial evidence, and it therefore constitutes reversible error. Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015); see also SSR 16-3p.

"[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the claimant's prior work record, statements about their symptoms, evidence submitted by the claimant's medical sources, and observations by the Agency's employees and other persons. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p. Factors the ALJ may consider, in addition to objective medical evidence, include an applicant's daily activities; the location, duration, frequency, and intensity of the complained of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain; treatment; and any other measures used to relieve pain. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p. The ALJ may also consider inconsistencies between an applicant's statements

regarding pain and the medical evidence.  See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p.

### 2. Plaintiff's testimony and ALJ's treatment thereof

In his written opinion, the ALJ summarized the Plaintiff's symptom testimony as follows:

> The claimant alleges she is disabled and unable to work as of July 3, 2017 (amended alleged onset date (AAOD) of December 13, 2021), due to the following: left elbow issues and arthritis, osteoarthritis of the left and right hand and both shoulders, as well as osteoarthritis of the hips and lower back issues, including pain.  At the hearing, the claimant testified she has problems with her hands, noting that when she goes to the doctors when she fills out paperwork that her arms gets [sic] worse and her fingers get numb. She also stated that she has difficulty using a computer key board. The claimant also stated that she can only sit or stand for an hour at a time. She also noted that it is the same thing for her shoulders when she is doing dishes, not more than an hour and her back hurts and shoulders hurt more and she has to lay down to relax her shoulders and low back.  The claimant also stated that in a given day she needs to lay down because of her back [] two to three times a day and also because of her shoulders (e.g., Exs. 1A/2, 3A/2, 1D/1, 2E/2, 1-7, 6E/2-3, 1-7, 7E/2, 1-8, 10E/4, 1-7, Testimony).

(AR 20–21.)  The ALJ did not describe Plaintiff's additional hearing testimony that she had difficulty lifting her arms for activities like doing her hair and showering, and difficulty with her shoulders when pushing or pulling.  (Compare id. (written opinion) with AR 98 (hearing testimony).)

After providing this summary and reciting the standard for evaluating such testimony,[4] the ALJ explained his two-step credibility analysis in one sentence, writing:

> After careful consideration of the evidence, the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the

---

[4] The Court notes that while he ALJ described the two-step process for evaluating Plaintiff's pain and symptom testimony described in the "Applicable Law" section, supra, he did not identify the requirement that an ALJ articulate clear and convincing reasons for rejecting Plaintiff's testimony in the second step.  (See AR 20–25.)

intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 21.)

The ALJ then summarized the medical records reflecting the status of Plaintiff's medical conditions, including degenerative disc disease of the back, left upper extremity rotator cuff repair, degenerative joint disease of the left shoulder, and obesity. (AR 21.) Following this, the ALJ described how the medical record included many "normal and mild physical clinical exam findings, including neurological." (AR 21-23.) He also noted that the record reflected "little, if any" treatment for Plaintiff's hips, and after a July 2021 lidocaine injection, her shoulders. (AR 23.) He then concluded that "[t]hese many normal and mild physical clinical exam findings also evidence inconsistencies with claimant's statements about the intensity, persistence, and limiting effects of her symptoms." (AR 23.) The remainder of the section includes the ALJ's evaluation of the medical opinion evidence, before concluding that the RFC "is supported by the medical record." (AR 23-25.)

### 3. Analysis

Neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "degenerative disc disease of the back, left upper extremity rotator cuff repair, degenerative joint disease of the left shoulder, and obesity." (See AR 19; ECF No. 17 at 2–3; ECF No. 22 at 2.) Because the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the first prong of the ALJ's inquiry regarding Plaintiff's subjective symptom testimony is satisfied. (See AR 21.) Furthermore, neither party alleges that the ALJ found evidence of Plaintiff malingering. (See ECF No. 17 at 5; ECF No. 22 (not discussing malingering).) As a result, the Court must determine whether the ALJ specifically identified which of Plaintiff's statements regarding pain and physical limitations he discredited, and provided specific, clear, and convincing reasons for doing

so. See Brown-Hunter, 806 F.3d at 489; Trevizo, 871 F.3d at 678; Garrison, 759 F.3d at 1014–15.

While the ALJ summarized Plaintiff's testimony and medical history and resolved step-one in favor of Plaintiff, he failed to identify which of Plaintiff's specific statements he found not credible. (See AR 20–25.) Following his summary of Plaintiff's testimony, the ALJ concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms <u>are not entirely consistent</u> with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 21 (emphasis added).) The Ninth Circuit has held this boilerplate introductory language, after which "ALJs typically identify what parts of the claimant's testimony were not credible and why," is not a "specific, clear, and convincing" reason for discounting a claimant's subjective testimony. Treichler, 775 F.3d at 1103; Vasquez, 572 F.3d at 592 (finding that the "vague allegation that [Plaintiff's claims] were 'not consistent with the objective medical evidence,'" was inadequate to reject Plaintiff's subjective testimony). In this case however, the ALJ failed to discuss the credibility of any specific testimony in his analysis, falling short of his "responsibility to provide 'a discussion of the evidence' and 'the reason or reasons upon which' his adverse determination is based." See Treichler, 775 F.3d at 1103. An ALJ's "'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion is insufficient for [the court's] review." Id. (quoting Vasquez, 572 F.3d at 592).

Furthermore, by failing to identify the specific testimony he was discounting, the ALJ did not directly tie any such testimony to a clear reason for rejecting it. (See AR 20–25.) Consequently, the Court is unable to discern what specific testimony the ALJ found inconsistent with the record. The Ninth Circuit has clearly held that "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." Brown-Hunter, 806 F.3d at 489. Though Defendant argues that the ALJ

"highlighted medical records that contradicted Plaintiff's claims of debilitating symptoms," (ECF No. 22 at 7), the ALJ did not juxtapose any medical records with any specific testimony.

Although the ALJ's conclusion appears to rely on his determination that the normal and mild medical findings in the record contradicted Plaintiff's pain testimony, (see AR 21–25 (citing, e.g., AR 1663–70, 1673–74, 1986–87, 2000–01)), such a contradiction is not evident. For example, an observation that Plaintiff had a normal nerve sensation during a medical examination is not necessarily inconsistent with Plaintiff's claim that she experiences numbness in her hands and shoulders when typing, writing, or using her phone. (Compare AR 21-23 with AR 97-98.) Thus, the Court cannot find that these normal physical exam findings alone, constituted clear and convincing evidence to discredit Plaintiff's testimony. See Maria H. v. Kijakazi, No. 20cv2532-RBB, 2022 WL 2229426, at *4–5 (S.D. Cal. June 21, 2022); Teresa H. v. Kijakazi, No. 20cv2186-RBB, 2022 WL 1812300, at *4 (S.D. Cal. June 2, 2022) (both finding the same). Furthermore, because merely reciting the medical record without affirmatively contrasting it to a plaintiff's testimony does not constitute a clear and convincing reason, the ALJ's finding fails to meet the requisite standard. See Brown-Hunter, 806 F.3d at 489 ("[T]he ALJ simply stat[ing] her non-credibility conclusion and then summariz[ing] the medical evidence supporting her RFC determination . . . is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision meaningfully."); see also Vasquez, 572 F.3d at 592; Trevizo, 871 F.3d at 678.

There is a significant and important distinction between medical evidence that contradicts, and medical evidence that fails to support, a plaintiff's subjective testimony. Defendant correctly asserts that medical records that contradict a plaintiff's pain testimony can be a clear and convincing reason to reject the testimony. (See ECF No. 22 at 7); Carmickle, 533 F.3d at 1161; Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995). On the other hand, medical evidence that does not completely support a plaintiff's

testimony, standing alone, is an insufficient reason to reject said testimony. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 884 (9th Cir. 2006) (finding an RFC determination justified as being "not consistent with or supported by the overall medical evidence of record" is "exactly the type [of justification] we have previously recognized the regulations prohibit").  Though the ALJ discussed much of the medical evidence in detail, nowhere did he demonstrate that the evidence contradicted Plaintiff's testimony, as opposed to not fully supporting it.  (See AR 21.)

Referring to the ALJ's brief observation that the medical record reflects little, if any, treatment after July 2021 for Plaintiff's shoulders and at any time for her hips, the Commissioner argues the ALJ relied on this valid rationale.[5]  (ECF No. 22 at 4.)  The Ninth Circuit has long recognized that an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" can justify rejecting a claimant's symptom testimony.  Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) and Smolen, 80 F.3d at 1284).  Recognizing that "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the agency explains that when considering Plaintiff's symptoms, it will consider, among other things, effectiveness and side effects of medications and other treatment or measures that are used to relieve pain.  20 C.F.R. § 404.1529(c)(3).  Applying this standard, Courts typically consider whether claimants have sought more than conservative treatment or taken advantage of such available treatment, and any provided reasons for not obtaining treatment.  See, e.g., Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (approving ALJ's reliance on claimant's failure to request and doctor's failure to prescribe any serious treatment for claimant's excruciating pain); Parra v. Astrue, 481

---

[5] The Court is not persuaded by Defendant's assertion that by failing to anticipate this argument, Plaintiff has "waived her opportunity to challenge the ALJ's full reasoning for discounting her symptoms."  (ECF No. 22 at 4 (citing Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1226 n.7 (9th Cir. 2009)).)  Plaintiff's argument encompasses this issue.

F.3d 742, (2007) (approving consideration of conservative treatment of only over-the-counter medication to reject pain testimony); Molina v. Astrue, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (finding clear and convincing reason to reject symptom testimony where claimant disregarded physician's assistant's advice to seek psychiatric treatment for anxiety and her reasons for doing so were unrelated to her mental illness).

This argument must also fail based on the ALJ's failure to identify which pain and symptom testimony was undermined by his observed lack of treatment.  Further, the Court notes evidence in the record that contradicts the ALJ's observation.  In the first place, from the end of 2020 into at least August of 2021, Plaintiff's primary treating physician, Dr. Pallia, advocated to get Worker's Compensation to approve an additional surgery for Plaintiff's left shoulder and treatment of her right shoulder.  (See, e.g., AR 1693, 1677, 1987, 2063.)  Plaintiff wanted to proceed with both.  (AR 1673-74, 1693.)  Dr. Pallia noted in December of 2020 that since March of 2020, Plaintiff had pursued a course of available physical therapy and massage therapy, taken Naprosyn, received a cortisone injection, and undergone an MRI. Which all left her frustrated that nothing seemed to be helping.  (AR 1678.)  The lidocaine injection Plaintiff received in July of 2021 was to ascertain whether she was likely to benefit from further surgery.  (AR 2063.)  Based on how she responded to the lidocaine, her secondary treating physician determined further surgery was not indicated at that time.  (AR 2056.)  This suggests that while Plaintiff was willing to undergo surgery or other more aggressive treatment after July of 2021 to relieve her pain, none was available to her at that time.

The Court also notes regarding Plaintiff's low back and hip pain, that she attempted physical therapy for her back, hip, and shoulder via video in October and November of 2020, while people were still minimizing their exposure to COVID -19.  (AR 2011-2016.)  On October 29, 2020, Plaintiff reported that she had stopped doing exercises after three days due to her pain symptoms.  (AR 2013.)  The physical therapist noted that Plaintiff continued with bilateral knee, hip, back and shoulder pain on November 25, 2020.  (AR 2012.)  Further, after being referred by her insurance

company, Plaintiff attended at least eleven chiropractic appointments between August 26 and November 18, 2021, and the appointments appeared to be ongoing when the records were printed.  (AR 2083-2100.)  The chiropractic treatment notes consistently showed Plaintiff complained of issues with her low back and hips.  (See, e.g., AR 2084 ("paresthesia into both lower extremities, increased with prolonged sitting and standing"), 2086 ("paresthesia, both legs"), and 2100 ("numbness/tingling down both legs R>L into her feet [w]ith sitting and standing for long periods – increased paresthesia and weakness into her legs").)  During these visits, the chiropractor treated Plaintiff's hips and back.  (See, e.g., AR 2087 (myofascial release to spinal areas, piriformis, and hamstring, and bilateral hip articular joint dysfunction discovered and adjusted), 2097 (same), 2099 (same), 2100 (same).)  The ALJ described these visits only as therapy for Plaintiff's neck and back and noted there were no neurological exam findings.  (AR 23.)  On November 18, 2021, the chiropractor noted that Plaintiff had also started doing physical therapy twice a week.  (AR 2100.)

Finally, medical records show that Plaintiff's primary care doctor ordered MRIs of her brain and cervical spine in early 2022, to see if a cause could be found for the numbness in her hands and feet.  (AR 34-37.)  An MRI of Plaintiff's right shoulder was also performed to address Plaintiff's right shoulder impingement, which revealed a "[s]mall focal intrasubstance tear at the medical aspect of the supraspinatus tendon footprint," with "[d]iffuse mild to moderate rotator cuff tendinopathy which is greatest at the infraspinatus tendon" and "mild subacromial/subdeltoid bursitis."  (AR 41.)  These suggest that into 2002, doctors continued to look for a solution to Plaintiff's pain. Based on the foregoing, the Court cannot find Plaintiff's failure to take advantage of available treatment was a clear and convincing reason to reject her pain testimony.

In this case, it appears Plaintiff underwent surgery, injections, physical therapy, and chiropractic therapy, and expressed a desire for further treatment, but no further treatments were availing.  On this record, the Court cannot conclude that Plaintiff's conservative treatment was a clear and convincing reason for rejecting her testimony.

See, e.g., Jennifer C. v. Kijakazi, Case No. 6:20-cv-1160-SI, 2022 WL 843386, at *12 (D. Or. Mar. 22, 2022) ("It does not appear that the ALJ considered Plaintiff's injections, chiropractic treatment, TENS therapy, and physical therapy when concluding that Plaintiff receive 'very conservative' treatment.").

## VI.  CONCLUSION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the case to the Social Security Administration for further proceedings.  Id.  Whether to remand for further proceedings or award benefits is within the discretion of the Court. See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  See Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, where the record has been fully developed, or where remand would unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).

In this case, Plaintiff requests this Court to reverse the ALJ's decision and award her benefits, or in the alternative, remand the matter to cure the legal error.  (ECF No. 17 at 7.)  Defendant asks the Court to uphold the decision, or in the alternative, remand for further proceedings.  (ECF No. 22 at 9.)  The Court concludes that remand for further proceedings is warranted because additional administrative proceedings could remedy the defects in the ALJ's decision.  Specifically, the Court **REMANDS so that the ALJ may reexamine** Plaintiff's subjective pain and symptom testimony and the applicable clear and convincing standard, in a manner consistent with this Order.

For the foregoing reasons, the Court **ORDERS** that judgment be entered **REVERSING** the ALJ's decision and **REMANDING** this matter for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: November 24, 2023

Honorable Michael S. Berg
United States Magistrate Judge